UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at FRANKFORT

CIVIL ACTION NO. 3:06-65-KKC

BELLSOUTH TELECOMMUNICATIONS, INC.,                              PLAINTIFF

v.                              **OPINION AND ORDER**

KENTUCKY PUBLIC SERVICE COMMISSION;
MARK DAVID GOSS, *in his official capacity as*
*Chairman of the Kentucky Public Service Commission*;
TERESA J. HILL, *in her official capacity as*
*Vice Chairman of the Kentucky Public Service Commission*;
and SOUTHEAST TELEPHONE, INC.,                              DEFENDANTS

* * * * * * * *

This matter is before the Court on Motion of the Plaintiff, BellSouth

Telecommunications, Inc. d/b/a AT&T Kentucky [hereinafter "AT&T Kentucky"], to Dismiss

Counterclaim One without Prejudice and to Enter Final Judgment; Or, in the Alternative, Motion

Pursuant to Federal Rule of Civil Procedure 54(b) for Entry of Judgment and Determination That

There is No Just Cause for Delay with Respect to Those Claims Decided in the Court's Order of

September 18, 2007 [R. 84].  For the reasons stated below, the Court **GRANTS** the Motion to

Dismiss Counterclaim One without Prejudice and to Enter Final Judgment.

**I.      Background**

In September 2006, after extensive litigation before this Court and the Kentucky Public

Service Commission, the Plaintiff, AT&T Kentucky, brought a further action before the Court.

In it, AT&T Kentucky sought declaratory and injunctive relief against the Defendants, the

Kentucky Public Service Commission [hereinafter "PSC"], its Commissioners, and SouthEast

Telephone, Inc. [herinafter "SouthEast"] from an August 16, 2006 decision of the PSC.  This

August 16, 2006 decision held that the PSC has jurisdiction over 47 U.S.C. § 271 elements and ordered AT&&T Kentucky to provide SouthEast unbundled network elements [hereinafter "UNE"] combinations required by 47 U.S.C. § 251 and Federal Communication Commission [hereinafter "FCC"] orders in concert with the section 271 elements.  *See* Order, *BellSouth Telecommunications, Inc.'s Notice of Intent to Disconnect Southeast Telephone, Inc. for Non-Payment*, Case Nos. 2005-00519, 2005-00533, at 11-12 (Ky. PSC Aug. 16, 2006) [hereinafter "PSC Order"].  The PSC also ordered that the rates for section 271 elements should be "TELRIC plus $1," until either "parties can agree on a new rate or until the Commission can establish one." *Id.* at 12.  AT&T Kentucky challenged this order before this Court, arguing that the order violated federal law and was preempted.  *See* Complaint.

SouthEast answered the Complaint and brought several counterclaims against AT&T Kentucky alleging violations of the Communications Act, the Kentucky Public Utility Statute, and various antitrust and commercial-law violations.  *See* Answer and Counterclaims of SouthEast Telephone, Inc. [hereinafter "Answer"].  AT&&T Kentucky then filed a Motion to Dismiss the Counterclaims and a Motion for Summary Judgment, and both Defendants filed Cross-Motions for Summary Judgment on AT&T Kentucky's Complaint.  On September 18, 2007, this Court granted AT&T Kentucky's Motion for Summary Judgment, denied the Defendants' Motions for Summary Judgment, and partially granted AT&T Kentucky's Motion to Dismiss SouthEast's counterclaims.  *See* Opinion and Order of September 18, 2007.  The Court dismissed most of SouthEast's counterclaims against AT&T Kentucky.  However, the Court also found that to the extent SouthEast claimed independent violations of 47 U.S.C. §§ 201 and 202 by claiming that AT&T Kentucky engaged in unreasonable practices, these matters were within

the primary jurisdiction of the FCC.  *Id.* at 24.  As such, the Court ordered that "any issues

pertaining to independent violations of §§ 201 and 202 will be stayed pending resolution by the

FCC.  Southeast will be given thirty days from entry of this Order to file a status report advising

the Court of its intentions regarding this Counterclaim."  *Id.*

On October 18, 2007, SouthEast filed the aforementioned status report with the Court.  In

it, SouthEast informed the Court that "SouthEast and AT&T are currently attempting to negotiate

an amicable resolution of the disputes between the parties and to reach a commercial agreement

providing for 'just and reasonable' rates, terms, and conditions for the matters at issue in the

particular counterclaim."  Status Report at 2.  SouthEast further stated that "[i]f the parties are

unable to reach such an agreement, SouthEast is prepared to pursue appropriate remedies,

including before the FCC."  *Id.*  According to correspondence between the parties from this time,

AT&T Kentucky notified SouthEast of its intent to disconnect SouthEast's ULS/UNE-P services

unless SouthEast voluntarily disconnected these services or transitioned them to a resale

arrangement or under a commercial agreement by November 16, 2007.  *See* Response to Motion

to Dismiss without Prejudice Counterclaim One, Exhibit One.  On November 16, 2007, AT&T

Kentucky and SouthEast entered into a commercial agreement, though SouthEast stated that it

was doing so out of necessity to prevent AT&T Kentucky from disconnecting its telephone

services.  On December 17, 2007, SouthEast demanded that AT&T Kentucky amend various

provisions of the previous agreement.  SouthEast contended that these modifications were

required to bring the agreement into compliance with 47 U.S.C. §§ 201, 202, and 271.  AT&T

Kentucky refused these demands on January 15, 2008.

Subsequent to the issuance of the Court's September 18, 2007 Opinion and Order, the

3

parties litigated several additional proceedings before the PSC related to the events and issues of this action, including what have been referred to as the "arbitration proceeding," PSC Case No. 2006-00316, and the "change of law proceeding," PSC Case No. 2004-00427.  In the arbitration proceeding, in which a PSC decision is still pending, AT&T Kentucky requested that the PSC vacate its earlier order establishing rates for 47 U.S.C. § 271 switching and clarify that it does not have jurisdiction to enforce or set rates under section 271, as this Court found in its Opinion and Order.  SouthEast opposes this position and raises other issues, argues that the PSC's earlier order should not be made final since this Court never made its Opinion and Order final and did not issue a final judgment, and counsels the PSC to refrain from addressing jurisdictional issues pending further developments before the FCC and possibly this Court.  In the change of law proceeding, the PSC ordered on December 12, 2007 that it has state-law authority to set conditions for AT&T Kentucky's local switching and other network elements, and also addressed the issues of intrastate service quality standards and the commingling of network elements required under 47 U.S.C. §§ 251 and 271.  After the PSC denied its Motion for Reconsideration, AT&T Kentucky brought suit for declaratory and injunctive relief before this Court on February 6, 2008.  This matter is now pending before Judge Reeves.

Finally, on February 12, 2008, AT&T Kentucky brought the present Motion before this Court.  It asks that the Court dismiss without prejudice SouthEast's first counterclaim, which is currently stayed, and enter final judgment for the case.  In the alternative, should the Court deny this relief, AT&T Kentucky asks that the Court enter final judgment pursuant to Federal Rule of Civil Procedure 54(b) and determine that there is no just cause for delay with respect to those claims decided in the September 18, 2007 Opinion and Order.  SouthEast opposes both of these

4

alternative forms of relief.

## II.   Analysis

AT&T Kentucky's first argument is that the Court should lift the stay of judgment on the Defendant's first counterclaim that it ordered in the September 18, 2007 Opinion and Order. AT&T Kentucky argues that when the Court stayed this counterclaim in the first place, it did so with the intention that SouthEast expeditiously seek appropriate relief before the FCC.  AT&T Kentucky states that since the September Order, SouthEast has given no indication that it will ever bring its claims before the FCC.  Instead, SouthEast has entered into a commercial agreement with AT&T Kentucky and has brought additional proceedings before the PSC.  AT&T Kentucky submits that SouthEast has effectively disregarded the entire purpose of the stay and has sat on its rights in the time since then.

SouthEast responds by arguing that it has diligently pursued efforts to resolve its claims against AT&T Kentucky in alternative forums to the FCC; namely, the PSC and private negotiation.  SouthEast states that these alternative efforts, if successful, will moot any need to bring its claims before the FCC at all.  SouthEast states that these negotiations have not been completed despite the fact that a commercial agreement was reached because SouthEast felt forced to enter into that agreement on unfair terms.  Further, SouthEast submits that the process of preparing an FCC complaint is a long and complicated procedure, for which the time period since the Court's September 18 Opinion and Order is not unusually lengthy.  Finally, SouthEast claims that dismissing the counterclaim would be unfair because dismissing the claim would deprive SouthEast of some of its damages claims.

In matters where claims are referred to the primary jurisdiction of an administrative

5

agency, the Court "has discretion to either retain jurisdiction or, if the parties would not be

unfairly disadvantaged, to dismiss the case without prejudice." *Reiter v. Cooper*, 507 U.S. 258,

268-69 (1993).  The Court believes it is appropriate to dismiss without prejudice SouthEast's

remaining counterclaim.  When the Court entered its September 18 Opinion and Order, it stayed

counterclaim one "pending resolution by the FCC."  Opinion and Order of September 18 at 24.

Since the Court held in that Opinion and Order that the FCC has primary jurisdiction over the

counterclaim at issue, the Court issued the stay with the intention that SouthEast bring its claim

before the FCC within a reasonable period of time, and if it did not intend to go before the FCC

at all, then to so notify the Court in the required status report.  In the status report, SouthEast

indicated that it was attempting to reach a commercial agreement with AT&T Kentucky

providing for "just and reasonable" rates, terms, and conditions, and that if it did reach this

agreement, it "is prepared to pursue appropriate remedies, including before the FCC."  Status

Report at 2.

Since the issuance of this status report, the parties have repeatedly negotiated, have

entered into a commercial agreement, and have litigated additional claims before the PSC.

Noticeably absent, however, are any tangible steps towards an FCC proceeding.  The Court did

not intend SouthEast to use the time since the September 18 Opinion and Order to continuously

relitigate before the PSC the same or similar issues resolved by that Opinion and Order.  It

appears that many of the positions SouthEast has taken in the PSC proceedings, particularly in

the arbitration proceeding, reflect an intention to reargue the now-resolved issue of the PSC's

jurisdiction over section 271 elements.  For example, as AT&T Kentucky points out, SouthEast

argues to the PSC that its arbitration order should not be made final because the Court's Opinion

and Order is not a final decision, and simultaneously argues to this Court that its Opinion and

Order should not be made final.  Rather than being a diligent means of resolving its claims, as

SouthEast contends, these types of tactics appear instead to be a dilatory method to avoid an

uncertain FCC resolution of its claims.  This is not a way to "pursue appropriate remedies," as

SouthEast indicated it would in its status report.

    Moreover, as AT&T Kentucky points out, the parties actually have entered into a

commercial agreement since the Court's September 18 Opinion and Order.  SouthEast responds

that it was effectively coerced into entering this agreement and that the agreement's terms do not

comply with the requirements of section 271 of the Communications Act.  However, as

explained in the Court's Opinion and Order, whether the agreement complies with section 271 is

a matter within the FCC's jurisdiction and is for it to decide; it is not a decision for the PSC to

make.  SouthEast is attempting to resolve this issue of the agreement's compliance with section

271 in a forum that is not able to resolve it under federal law.  If SouthEast truly felt that the

commercial agreement it entered into with AT&T Kentucky is illegal and unfair, this was all the

more reason to bring its claims before the FCC, as the Court envisioned in its Opinion and Order.

SouthEast, however, has chosen not to pursue this route.

    More than eight months have now passed since the Court's September 18 Opinion and

Order, and SouthEast has yet to notify the Court of any definitive steps that it has taken towards

bringing its claims before the FCC.  SouthEast argues that it needs a great deal of time to prepare

copies of the files, affidavits, and other documents necessary to prepare an FCC complaint, and

that such a delay is therefore not unusual.  Even were the Court to credit this argument, the eight

months is not a realistic assessment of the minimum amount of time SouthEast has actually had

to prepare for a possible FCC proceeding.  The proceedings of this case, however, date back to 2006, and an earlier action before this Court and earlier PSC proceedings that led to the present action began even earlier, in 2005.  SouthEast has therefore had between two and three years to prepare for a forthcoming FCC proceeding, surely more than enough time to constitute adequate preparation for an FCC complaint.

SouthEast further argues that the FCC requires parties to make "reasonable efforts" to resolve their dispute before filing a complaint, further justifying a continued delay.  The long and short of this is that two to three years of negotiations, litigation before multiple forums, and a commercial agreement certainly must constitute "reasonable efforts."  SouthEast also claims in its Response that, "barring changes in circumstances, SouthEast now expects to file its complaint within the next 45 days."  Response at 13.  This forty-five day period has now passed, and the Court has received no indication from SouthEast that it has filed its complaint with the FCC as it said it would.  There is no justifiable reason for SouthEast's failure to bring its claims before the FCC in the eight months since the Court's September 18 Opinion and Order.  In fact, this gives reason for the Court to believe that SouthEast does not intend to ever file a complaint with the FCC, and instead intends to keep its counterclaim perpetually stayed while it continues to litigate before its chosen forum of the PSC, a forum which cannot decide claims involving section 271.

Finally, SouthEast also argues that dismissing the counterclaim without prejudice will be unfairly prejudicial to its recovery of damages.  SouthEast argues that if the Court dismisses the counterclaim without prejudice, and SouthEast later prevails at the FCC, it would have to re-file its claim before this Court in order to obtain monetary relief.  SouthEast says that by this time, some of its sought-after damages may have become time-barred by the applicable statute of

8

limitations, and thus unobtainable due to the Court's actions.  However, as AT&T Kentucky

correctly notes, SouthEast has not identified what damages, if any, would be time-barred and

when these damages accrued.  Essentially, the Court is asked to simply take SouthEast's word

that "some" of their damages will likely become time-barred should the Court dismiss the

counterclaim without prejudice.  The Court need not do this.  Moreover, even were some of the

requested damages to become time-barred, this can hardly be attributed to the Court.  SouthEast

has had eight months to bring an FCC complaint to help ensure that all of its damages remain

timely, it has not done so, and as explained above, this delay is unjustifiable.  If any sought-after

damages are or become time-barred by the Court's dismissing the counterclaim without

prejudice, SouthEast has only itself to blame.

In the Court's estimation, neither AT&T Kentucky nor SouthEast will be unfairly

disadvantaged by dismissing SouthEast's remaining counterclaim without prejudice.  *See Reiter*,

507 U.S. at 568-69.  As such, the Court exercises its discretion to lift the stay imposed by its

September 18 Opinion and Order, dismisses counterclaim one without prejudice, and enters final

judgment for that Opinion and Order.  Since the Court has granted AT&T Kentucky the first

requested form of relief in its Motion, it is thus unnecessary to address the merits of the

alternative form of relief sought, an entry of judgment pursuant to Federal Rule of Civil

Procedure 54(b).

**THEREFORE,** the Court being fully and sufficiently advised, it is **HEREBY ORDERED** that:

(1)     The Plaintiff's Motion to Dismiss Counterclaim One without Prejudice and to

        Enter Final Judgment; Or, in the Alternative, Motion Pursuant to Federal Rule of

        Civil Procedure 54(b) for Entry of Judgment and Determination That There is No

Just Cause for Delay with Respect to Those Claims Decided in the Court's

September 18, 2007 Memorandum Opinion and Order is **GRANTED**; and

(2)      The Defendant's Counterclaim One is **DISMISSED WITHOUT PREJUDICE**.

Dated this 16th day of June, 2008.

**Signed By:**

***Karen K. Caldwell*** *KKC*

**United States District Judge**